WASTE MANAGEMENT OF OHIO, INC., Appellant,

v.

MID–AMERICA TIRE, INC., et al., Appellee.

SWIGER, Appellant,

v.

MID–AMERICA TIRE, INC., Appellee.

[Cite as *Waste Mgt. of Ohio, Inc. v. Mid–America Tire, Inc.* (1996), 113 Ohio App.3d 529.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 15517, 15519.

Decided Aug. 16, 1996.

530

*John F. Wetli,* for appellant Waste Management of Ohio, Inc.

*James D. Ruppert,* for appellant Richard L. Swiger.

*Christopher W. Carrigg,* for appellee Mid–America Tire, Inc.

WOLFF, Judge.

Waste Management of Ohio, Inc. ("Waste Management") and Richard L. Swiger appeal from a judgment of the Montgomery County Court of Common Pleas in favor of Mid–America Tire, Inc. ("Mid–America").

The undisputed facts are as follows.

In 1991, Johnny Banks and Richard Swiger were employees of Waste Management, a company that disposes of trash for industrial businesses. Waste Management had a maintenance contract with Mid–America for the wheels on its trucks. On March 26, 1991, at Waste Management's premises, Banks and Swiger were mounting a multipiece wheel which had been serviced by Mid–America onto a Waste Management truck. The wheel exploded as Banks was tightening the lug nuts with an air-driven impact wrench. Banks was thrown backwards into a metal rack and partially decapitated; he died almost immediately. Metal fragments were blown into Swiger's eyes, for which he required medical treatment. Swiger also suffered from post-traumatic stress disorder, other psychological problems, and alcoholism following the accident.

Waste Management filed a complaint against Mid–America and the Goodyear Tire and Rubber Company ("Goodyear") in March 1993 to recover its past and future workers' compensation payments made on behalf of Swiger and Banks. These payments amounted to over $100,000 at the time of trial. Swiger also filed a complaint against Mid–America and Goodyear in March 1993. Waste Management's and Swiger's claims were based upon negligence in the design, manufacture, and maintenance of Waste Management's multipiece wheels. The trial court consolidated Waste Management's and Swiger's cases on October 6, 1993. Waste Management and Swiger voluntarily dismissed their causes of action against Goodyear prior to trial.

The consolidated case against Mid–America was tried to a jury in late August and early September 1995. On September 6, the jury returned a verdict in favor of Mid–America, indicating through an interrogatory that it found that Mid–America had not been negligent.

Waste Management and Swiger appeal from the judgment in favor of Mid–America. In several respects, the issues raised by the appellants are the same and will be addressed together. The first common assigned error is as follows:

"The trial court erred in allowing defense expert Seybold to offer an opinion about the cause of the explosion because Mid–America failed to supplement discovery regarding the substance of Seybold's expert testimony as required by Civ.R. 26(E)(1)(b)."

Waste Management and Swiger argue that they were unfairly surprised by defense expert Douglas Seybold's testimony at trial that Waste Management employees caused the wheel's explosion by tightening the lug nuts improperly. They claim that the only information they had received prior to trial about the subject matter of Seybold's opinion was his written report following his investigation. The report stated, "It is difficult to develop a definite conclusion [about the

cause of the explosion] based on available information. Something caused this side split ring to part from the rim and effectuated the accident. Further information is required."

Several days into the trial Seybold saw a high-quality reproduction of one of the coroner's photographs of the accident scene, and he allegedly for the first time formed an opinion about the cause of the explosion. Waste Management and Swiger claim that they were unprepared to respond to Seybold's testimony because they had not been notified prior to trial that he had formed an opinion, had not taken Seybold's deposition, and were unable to call an expert to rebut Seybold's new assertions. Waste Management's and Swiger's attorneys stated at oral argument that they had not requested a continuance because they thought a continuance of the length necessary to adequately prepare a response to Seybold's testimony was impracticable with a jury empaneled and the trial under way.

In response to these allegations, Mid–America asserts, as it did at trial, that Waste Management's and Swiger's unpreparedness was attributable to their own failure to conduct discovery in relation to Seybold. It also claims that the subject matter of Seybold's testimony did not change at any point in the proceedings; rather, it merely "expanded." Mid–America argues that its original response to the interrogatory, *i.e.*, Seybold's report, was "not 'made incorrect'" simply because his opinion was more detailed at trial.

■ The Supreme Court has held that the admission or exclusion of evidence is within the sound discretion of the trial court and that, unless the trial court clearly abused its discretion and a party was materially prejudiced as a result, reviewing courts should be slow to interfere. *State v. Withers* (1975), 44 Ohio St.2d 53, 55, 73 O.O.2d 280, 281, 337 N.E.2d 780, 781. It has also held that expert testimony may be excluded as a sanction for a violation of Civ.R. 26(E)(1)(b). *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 370, 28 OBR 429, 431–432, 504 N.E.2d 44, 47; *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 86, 12 OBR 73, 75–76, 465 N.E.2d 444, 446. Although Civ.R. 26(E)(1)(b) does not require a party to give an opposing party notice of every nuance of an expert's opinion, it does require supplementation of the subject matter on which an expert is expected to testify. *Tritt v. Judd's Moving & Storage, Inc.* (1990), 62 Ohio App.3d 206, 211–212, 574 N.E.2d 1178, 1182–1183. The purpose of this rule is to prevent trial by ambush. If discovery is to serve its purpose, the parties must be entitled, upon the unveiling of a contention, to a reasonable opportunity to prepare to defend against it. *Shumaker, supra*, 28 Ohio St.3d at 371, 28 OBR at 432, 504 N.E.2d at 47–48.

In *Wimmers v. Camacho* (July 27, 1993), Montgomery App. No. 13272, unreported, 1993 WL 295081, a medical malpractice case, the trial court excluded

a doctor's expert testimony about whether the defendant doctor had had a duty to send the decedent to the intensive care unit following surgery. The expert in question had not offered an opinion on this issue at his deposition, "even though he was given ample opportunity to do so," nor had the plaintiff supplemented discovery to notify the defense of this opinion. Although the same opinion was offered by other experts at trial, and Wimmers was prepared to rebut those opinions, we held that the change in the expert's testimony could not be fairly characterized as a "nuance" and that supplementation of earlier discovery had been required by Civ.R. 26(E)(1)(b). We upheld the trial court's exclusion of the expert's testimony because the party offering the testimony had failed to supplement the expert's opinion and, unfairly, the defense had only become aware of the opinion for the first time at trial.

■ In our view, Seybold's surprise opinion, undisclosed by Mid–America during discovery and revealed for the first time during trial, created the type of unfair surprise Civ.R. 26(E)(1)(b) is intended to prevent. As in *Wimmers*, the difference between Seybold's opinion in his report prior to trial that he could not arrive at a conclusion without more information and his opinion at trial that Waste Management's employees had caused the wheel's explosion by improperly tightening the lug nuts was more than a nuance. Based on his report, Waste Management and Swiger could not have been expected to anticipate Seybold's testimony about the cause of the explosion, and, as a result, they did not have a fair opportunity to respond to his new opinion. Therefore, we find that the trial court abused its discretion in admitting Seybold's testimony about the cause of the accident.

We are unpersuaded by Mid–America's argument that Waste Management and Swiger were at fault for their surprise because they did not depose Seybold. In light of Seybold's report stating that he was unable to reach a conclusion about the cause of the accident, Waste Management and Swiger could have reasonably decided not to spend time and money deposing Seybold. We are also unpersuaded by Mid–America's contention, raised for the first time at oral argument, that Waste Management and Swiger should have deposed Seybold because they knew that his reported opinion that the cause of the explosion could not be determined conflicted with their own expert's opinion that the accident was caused by Mid–America's failure to properly clean the rim of the wheel. Regardless of whatever conflicts might have existed, Waste Management and Swiger could have made a reasonable professional judgment not to depose an expert who professed to have no opinion. Even assuming, however, that Waste Management and Swiger could have identified some discrepancies between Seybold's and their own expert's conclusions prior to trial, they would have nonetheless been unprepared to respond to Seybold's new conclusion as to the cause of the accident.

The assignment of error related to the unfair surprise occasioned by Seybold's testimony is sustained.

The second error asserted by Waste Management and Swiger is as follows.

"The trial court erred in allowing Seybold's testimony because he was not qualified as an expert by any specialized knowledge, skill, experience, training, or education regarding the cause of the tire explosion."

Waste Management and Swiger assert that Seybold was not qualified to state an expert opinion about the cause of the accident at Waste Management because he lacked any specialized knowledge, skill, experience, training, or education in multipiece wheels or their failure, as required by Evid.R. 702(B).

The trial court overruled Waste Management's and Swiger's request to voir dire Seybold about his qualifications and allowed him to testify about the assembly of multipiece wheels and the cause of the explosion. During direct and cross-examination, Seybold provided the following information about his qualifications. Seybold had assembled multipiece wheels for farm equipment when he was in high school. He had taken a few engineering classes, but could not recall the topics of those classes, and he had not earned an engineering degree. Seybold's formal education was in business administration and accounting, in which he had earned an associate degree. His work experience was in the areas of real estate, reconstruction of automobile accidents, and the design of telecommunications components. Seybold had never investigated a multipiece wheel failure or done any studies related to multipiece wheels.

■ Based on his experience with farm equipment, Seybold possessed knowledge and experience above that of a lay person about the assembly of multipiece wheels and was qualified to testify as an expert in regard to their assembly. We agree with Waste Management and Swiger, however, that Seybold had no specialized knowledge, skill, training, experience, or education which qualified him as an expert on multipiece wheel explosions. Therefore, he should not have been allowed to opine that "it doesn't appear that anything else could have caused this rim to open up as it did other than [the manner in which the nuts were] tightened." The trial court erred in allowing Seybold to state an opinion regarding the cause of the accident at Waste Management.

■ Although Mid–America stated at oral argument that Waste Management and Swiger could not have been prejudiced by Seybold's opinions about the explosion because Seybold was "crucified" on cross-examination, the record refutes this contention. Seybold was Mid–America's only expert witness about negligence in the assembly of the tire and about the cause of the explosion. Therefore, the jury must have relied on his testimony in returning a judgment for the defense. Although some weaknesses in Seybold's qualifications and conclu-

sions were exposed on cross-examination, we find that his unqualified testimony must have been believed by the jury and thus was prejudicial to Waste Management and Swiger.

The assignment of error related to Seybold's qualifications as an expert is sustained.

The third error assigned by Waste Management and Swiger is as follows:

"The trial court should have excluded Seybold's opinion about how dirt got into the wheel rim because the opinion was not given to a sufficient degree of probability."

Waste Management and Swiger contend that the trial court should have excluded Seybold's testimony that dirt in the multipiece wheel rim "*could have been picked up if the rim was drug [sic] across the floor*" after the accident and that the dirt in the wheel rim looked like floor dirt in pictures taken by Waste Management's expert, Dr. Ottfried J. Hahn. This testimony was offered in response to Dr. Hahn's opinion that dirt was in the rim when the wheel was assembled by Mid–America, and that the dirt prevented the pieces of the wheel from locking together properly. On cross-examination, Seybold admitted that his opinion that the dirt shown in Dr. Hahn's pictures looked like floor dirt was based upon common sense, logic, and sight, and not on any specialized knowledge.

■ An expert must state his opinions in terms of probability, meaning that he must express that there is a greater than fifty percent likelihood that a certain act or failure to act caused a given result. *Stinson v. England* (1994), 69 Ohio St.3d 451, 455, 633 N.E.2d 532, 537. This principle applies with equal force to opinions offered by plaintiffs and defendants. *Id.* Whether an expert expresses an opinion in these terms affects the admissibility and competence of the opinion and not merely its weight. *Id.* An expert is thus precluded from engaging in speculation or conjecture with respect to possible causes. *Id.* at 457, 633 N.E.2d at 538–539.

The origin of the dirt in the wheel rim was essential to Seybold's opinion as to the cause of the explosion because Dr. Hahn had opined that he had "no question" that the dirt was in the wheel rim when Mid–America assembled the wheel. Thus, Seybold's opinion as to this essential fact—*i.e.,* the origin of the dirt being the service bay floor at Waste Management—had to have been testified to in terms of probability for this opinion and Seybold's opinion as to the cause of the explosion to have been admissible.

Seybold's opinion that the dirt in the wheel rim "could have been picked up" from the floor of the service bay area after the explosion was not stated with the required degree of probability. When Waste Management and Swiger objected to this testimony, the trial court properly sustained the objections. We must

infer from Waste Management's and Swiger's arguments, then, that they object to the fact that the trial court did not do *more* than sustain the objection, such as striking the statement from the record or instructing the jury to disregard it.

■ The records reflects that Waste Management and Swiger never requested that the trial court do more than sustain the objection. By failing to timely request admonishments to the jury to disregard Seybold's statement or to move to strike the testimony about what *could have* happened to the wheel after the accident, Waste Management and Swiger failed to preserve this issue for appeal. See *Bolton v. Delco Moraine Div. Gen. Motors Corp.* (Jan. 7, 1992), Montgomery App. No. 12460, unreported, 1992 WL 2243.

The assigned error regarding Seybold's failure to state his opinions with the required degree of probability is overruled.

Swiger raises one additional issue related to Seybold's testimony as follows:

"The trial court erred and abused its discretion when it admitted the testimony of an 'expert' which was based solely upon that person's interpretation of a picture and, as such, is a matter within the common knowledge of a jury."

Swiger contends that Seybold improperly testified about the cause of the accident where he looked at a coroner's picture of the multipiece wheel taken immediately after the accident and, based upon the picture, stated an opinion about which lug nuts had been tightened. Seybold then related the pattern in which the lug nuts had been tightened to the cause of the explosion. Seybold admitted on cross-examination that "an average person" could have looked at the photograph and noted which nuts were tightened, and that he did not bring any specialized knowledge to this particular task.

■ Although Seybold conceded that an average person could have formed an opinion about the positions of the lug nuts by looking at the coroner's photograph, he did not concede that an average person could have appreciated the significance of the lug nut configuration. An expert must state the foundation upon which he bases an opinion. *State v. Davis* (1989), 64 Ohio App.3d 334, 346, 581 N.E.2d 604, 612. Seybold's assessment of what the picture showed about the positions of the lug nuts demonstrated to the jury the foundation for his opinion. Thus, if Seybold had been qualified to testify about the cause of the explosion, his testimony would not have been improper based solely on his admission that the jury could have reached its own conclusion about the position of the lug nuts. Indeed, if the jury's own assessment of the photograph caused it to question the reliability of Seybold's ultimate conclusion, the jury was free to take that fact into account in weighing Seybold's testimony.

Swiger's assignment of error related to Seybold's testimony about the coroner's picture is overruled.

The fourth error assigned by Waste Management and Swiger is as follows:

"OSHA regulations and other exhibits excluded by the trial court should have been admitted as evidence bearing on the question of Mid–America's negligence in servicing the multi-piece wheel."

Waste Management and Swiger argue that the trial court's exclusion of Occupational Safety and Health Administration ("OSHA") regulations, a Goodyear training video, and a Goodyear poster was error, and that the prejudice resulting from this error is evidenced by the jury's verdict.

The OSHA regulation and the Goodyear poster related to the servicing of multipiece wheels. The OSHA regulation states, in part:

"Rim flanks, rim gutters, ring beads, seating surfaces, and the bead areas of the tire shall be free of any dirt, surface rust, scale or loose or flaked rubber buildup prior to mounting and inflation." OSHA Reg. 1910.177(E)(3).

Waste Management and Swiger sought to admit this regulation in conjunction with Dr. Hahn's testimony about dirt found in the wheel rim as evidence of the proper procedures for assembling a multipiece wheel. The trial court refused to admit the OSHA regulation because it was duplicative and contained "some things * * * that are not related to tires and wheels." The trial court excluded the poster because it included information about many types of wheels other than the multipiece wheel.

■ In our opinion, the OSHA regulation about multipiece wheels had probative value and should have been admitted into evidence. However, Waste Management's expert, Hahn, read the regulation to the jury and testified about it at length. Hahn also testified about rim manufacturers' publications, such as the Goodyear poster, indicating that locking surfaces must be cleaned before assembly. In light of the other evidence before the jury about the proper method for assembling a multipiece wheel, we cannot conclude that the trial court's exclusion of the OSHA regulation or the Goodyear poster, as cumulative or out of concern for irrelevant portions, prejudiced Waste Management or Swiger.

■ The Goodyear training video depicted dummies involved in several wheel explosions and included information about wheels unlike the one involved in this case. The trial court did not abuse its discretion by excluding the video because of the possible inflammatory effect of the simulated explosions on the jury and because the relevant information was repetitive of the expert testimony.

The assigned error related to the admission of OSHA regulations, a Goodyear poster, and a training video is overruled.

Waste Management asserts one additional assignment of error as follows:

"The trial court erred in admitting the August 9, 1991 Waste Management memorandum because evidence of subsequent remedial measures is inadmissible under Evid.R. 407 and because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of issues and misleading of the jury."

Waste Management argues that the admission of its August 9, 1991 memorandum about phasing out the use of multipiece wheels was evidence of its subsequent remedial acts that was inadmissible pursuant to Evid.R. 407. Mid–America contends that the memorandum was admissible as evidence of a feasible alternative to the multipiece wheels and as an admission by a party opponent, the relevance of which outweighed its prejudicial effect.

In our view, whether the trial court abused its discretion by admitting the August 9, 1991 memorandum is a close call. The testimony of Waste Management employees and the memorandum itself made clear that the phase-out of the multipiece wheels over a period of several years had begun prior to the accident involving Banks and Swiger. Thus, the original plan to phase out the multipiece wheels was not a subsequent remedial measure and was not prohibited by Evid.R. 407.

On the other hand, the Waste Management memorandum also indicated that the company had accelerated the phase-out of multipiece wheels in the months following the accident. This acceleration of the phase-out, mentioned in the memorandum with reference to the many accidents and lawsuits involving multipiece wheels, did constitute evidence of a subsequent remedial measure prohibited by Evid.R. 407. Even assuming, *arguendo,* that the memorandum served some proper evidentiary purpose, the trial court should have made an effort to serve that purpose without reference to the accelerated phase-out.

Waste Management requested that the trial court redact the paragraph of the memorandum which discussed the acceleration of the phase-out of the multipiece wheels. The trial court refused this request. We think that the trial court should have granted this request to eliminate the reference to a subsequent remedial measure. The trial court did instruct the jury, however, that "subsequent alterations or repair or phase-out in purchase of equipment, machinery, and the like, taken in precaution to safeguard the future against accidents are not to be accepted or construed by the jury as an admission of responsibility for the past, nor can they be taken to mean that Waste Management had been negligent before the accident happened." In light of this clear instruction, we are unable to conclude that Waste Management was prejudiced by any error in the admission of the memorandum.

Waste Management's assignment of error related to the admission of its memorandum is overruled.

Based on our disposition of the first and second common assignments of error, the judgment of the trial court will be reversed, and the matter will be remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

FREDERICK N. YOUNG, J., concurs.

BROGAN, P.J., concurs in part and dissents in part.

BROGAN, Presiding Judge, concurring in part and dissenting in part.

I concur in the well-reasoned opinion of Judge Wolff, except that I find no abuse of discretion present in the trial court's determination that Douglas Seybold was qualified to give expert testimony on the cause of the wheel explosion.