DECISION.
Appellant Vondetta Faulk suffered injuries from an electric shock she received when she turned on her personal computer at work. The computer, an IBM PS/2 55SX, was manufactured by appellee International Business Machines Corporation ("IBM"). Faulk sued IBM, alleging that the computer was defective in design. According to Faulk, the computer was designed so that if its internal power supply failed, and it was plugged into an ungrounded circuit, the computer's user could be shocked. She also claimed that IBM knew this and failed to issue a warning.
I. Faulk's Appeal
A jury found in favor of IBM. Faulk appeals the trial court's judgment in favor of IBM, raising two assignments of error. She contends in her first assignment that the trial court erred in overruling her motion to strike the testimony of IBM's expert witness and in denying her motion for a mistrial. In her second assignment, Faulk argues that the trial court erred by overruling her motion for a new trial. Faulk's assignments are premised on the same fundament: that IBM's expert gave an opinion on causation at trial that differed from the opinion he had given during his deposition, and that IBM had failed to provide notice of the change to Faulk as required under Civ.R. 26. IBM has filed a cross-appeal and, in its sole assignment, contends that the trial court erred by overruling its motions for a directed verdict.
II. The Testimony of Faulk's Expert
When Faulk turned on her computer, she experienced an electric shock that threw her several feet. Her artificial fingernail also melted. Faulk's theory was that the computer short-circuited while plugged into an ungrounded circuit. Faulk's expert, Dr. Patrick Garrett, opined that Faulk touched the metal chassis of the computer while she moved the plastic switch to the "on" position. According to Dr. Garrett, the computer's metal frame became "energized" by one of two possible failures in the internal power supply. In the first scenario, one of the two transistors in the computer short-circuited, causing direct current, as opposed to alternating current, to be applied to the winding of the transformer. This caused the insulation surrounding the transformer to melt. Consequently, the energized metal on which the transformer was mounted came in contact with metal surrounding the chassis of the computer, thus energizing it. In the second scenario, the computer's electrolytic capacitor short-circuited and caused a chemical change such that the current then energized the chassis.
Dr. Garrett's opinion depended on the surge protector being plugged into an ungrounded circuit. Under either of his scenarios, when Faulk touched the metal chassis, she provided the pathway to ground for the electric current, because the wiring in the building was not grounded. Dr. Garrett made the determination that the circuit was ungrounded based on photographs of a "rat's nest" of wiring in Faulk's cubicle. (He also determined that the plastic surrounding the face of the computer and the switch was made of insignificantly conductive plastic.) According to Dr. Garrett's theory, it was the computer's short-circuiting that damaged the surge protector and injured Faulk.
III. The Deposition Testimony of IBM's Expert
IBM's theory was that the surge protector short-circuited while plugged into a grounded circuit. According to the deposition testimony of IBM's expert, Randall Bills, Faulk "probably received her injuries from her turning on the surge protector rather than from the CPU unit for the computer." According to Bills, when Faulk turned on the surge protector, one of the three MOVs (metal oxide varistors) contained inside it vaporized as a result of degradation over time. (An MOV acts as a switch that closes when a certain voltage level is reached so as to prevent damage from a surge of electrical power to equipment attached to a surge protector. Each surge slightly degrades the MOV. As it degrades, the MOV starts generating heat on its own and burns itself up.) According to Bills, the computer did not cause Faulk's injuries because there was evidence that the green light on the computer was activated after the accident (indicating that the power supply in the computer was functioning properly), and because there was no external damage to the computer. Bills testified that the large amount of energy it took to cause damage to Faulk's fingernail would have left corresponding damage to the computer.
Bills also testified in his deposition that the electrical system at Faulk's cubicle was grounded based upon a document from Banta Electric that indicated that there were no wiring problems in the walls of the cubicle or in the electrical system. Bills also stated that the documents he had reviewed indicated that the front vertical surface of the computer where the switch and disk drives were located (the "bezel") and the off/on switch were plastic and could not be energized or electrified. There was no dispute, however, that the chassis of the computer was made of metal.
Bills further testified in his deposition that if the ground was missing at some point between the computer and the walls of the cubicle or the walls of the electrical system, if the capacitator in the computer failed at the exact moment the computer was turned on, and if the operator was in contact with a surface that was connected to the capacitator, the housing of the computer could become "electrified." It was his understanding that the surge protector was plugged into an outlet at the base of the cubicle. There was no evidence in his review to indicate that the surge protector was plugged into an ungrounded circuit. During his deposition, Bills stated that there would have been no hazards associated with the computer if it was plugged into an ungrounded outlet, unless something possibly failed inside the computer, "and then the only hazard would be if the failure occurred in such a manner that it energized the ground or the metal components of the computer and then someone touched those along with being grounded and completed the current path through themselves."
At the time of their depositions, neither Bills nor Garrett had examined a computer similar to the one at issue. (The one used by Faulk had disappeared after the incident.) Before trial, however, Bills did examine a specimen model of the IBM computer at issue.
IV. The Trial Testimony of IBM's Expert
At trial, Bills testified that the MOV located between the neutral line and the ground line of the surge protector failed as a result of degradation. He testified that the neutral wire became energized when electrical current was returning to the circuit-breaker panel after going through the "load." He was asked what would have happened to the electrical current as it flowed back along the neutral line into a surge protector when a device was turned on that was connected to a surge protector in which the MOV located between the neutral and ground wires had short-circuited and was in the process of failing. Bills responded that the current would have flowed toward the circuit-breaker panel through the connected ground wire. He was then asked what would have occurred if "this entire system" was plugged into a circuit with no effective earth ground. He testified that there would have been no current flow through the MOV with no connection through ground back to the panel.
The next question addressed to Bills was what would have occurred if an electrical device (not a personal computer) with a "three-pronged outlet and a piece of metal that you can touch" were plugged into a surge protector with a failing MOV between neutral and ground, and there was no effective earth ground in the circuit. He responded that current would have flowed through the MOV if someone touched the metal on the object while he or she was grounded in some way. He also responded that the individual could receive a shock.
Faulk objected, stating that Bills was changing his opinion that Faulk was shocked when she touched the surge protector, not when she touched the object into which the surge protector was plugged. The objection was overruled. Bills was then asked what would have happened to someone touching the computer if there were an effective ground in the circuit. Bills said that nothing would have occurred because the ground would have drained the voltage to the panel. He also testified that if someone reported a shock with an effective ground, the person had to be touching the surge protector, because the effective ground would have stopped the metal parts of the computer from being energized.
Bills was also asked whether he had performed tests to determine the conductivity of the front plate of the computer. He had, but found no conductivity. No objection was made to that testimony.
On cross-examination, Bills agreed that if a person was shocked touching the computer's metal part, there must have been an absence of ground beyond the electrical cord of the computer. He also testified that the following facts were important to his conclusion that Faulk could not have received a shock from touching the computer: (1) Faulk was touching the plastic parts of the computer; (2) there was no damage to the computer; and (3) the light demonstrating that the computer was operational was on. When asked about his previous conclusion that Faulk had been injured when she turned on the surge protector, Bills stated that he still believed that conclusion, based on the facts that (1) there was no external damage to the computer, (2) the computer's operational light was on, and (3) an electrician had reported that there was "no problem" with the building's electrical system.
V. IBM'S Closing Argument
In closing argument, IBM's counsel argued that it was the surge protector and not the computer that had caused Faulk's injuries. He stated that "the computer happened to be the thing that she was probably touching when the surge protector put the electricity back into the line and shocked the lady." He also argued,
 So we have an opinion, which was that if the circuit was grounded, the surge protector is the thing of necessity that she had to have been touching to cause the shock; but she denies it, her friends deny it, the people closest to her deny it, and she got shocked.
 So that left [Bills] with the second choice. The second choice flows from, well, if its not grounded, then you surely could get a shock by touching the computer; but you could just as easily have gotten a shock by touching a lamp, an electric pencil sharpener, a clock radio, a clock. Any device that was connected to that failing surge protector with a three-prong plug that had a piece of metal on it would have produced exactly the same result
* * *
 The dilemma of knowing what the problem was and trying to reconcile it with the lady's shock injury is what caused Bills to go two different directions: the grounded direction, touching the surge protector; the ungrounded direction, touching, perhaps, the computer. Either way the opinion remains the same. And they are totally consistent with each other because it depends on the circumstances as to which cause you end up with.
 VI. Standard of Review-Abuse of Discretion
The gist of Faulk's argument is that Bills's trial testimony presented a new theory: that an ungrounded outlet and a surge-protector failure permitted electric current to energize the computer. IBM argues that Bills's testimony was altered only as to what would have occurred if the circuit had been ungrounded, but that, under either scenario, the cause of Faulk's injuries was still the failure of the surge protector. In the ungrounded-circuit scenario, the computer merely became the vehicle through which the surge protector shocked Faulk.
We review a denial of a motion for a mistrial under an abuse-of-discretion standard.[1] An abuse-of-discretion standard is also applicable to the review of a motion for a new trial brought under Civ.R. 59(A), which provides that a trial court may grant a new trial under certain enumerated instances or for good cause. Faulk argues that she was entitled to a new trial under Civ.R. 59(A)(1) (irregularity of proceedings), Civ.R. 59(A)(2) (misconduct of IBM), Civ.R. 59(A)(3) (surprise), and Civ.R. 59(A)(9) (error of law brought to the trial court's attention). When reviewing a trial court's decision whether to sanction a party for a discovery violation by striking a witness's testimony, an appellate court should limit its review to whether the trial court abused its discretion and caused material prejudice.[2]
In this case, Faulk argues that she was prejudiced because IBM's failure to inform her of Bills's allegedly new theory in a timely manner prevented her from obtaining testimony from Dr. Garrett to refute the theory. This prejudice, according to Faulk, was compounded by the fact that Dr. Garrett was unavailable for rebuttal because he was out of the country.
VII. Civ.R. 26(E) Supplementation
Civ.R. 26(E)(1) places a duty on a party to seasonably supplement the subject matter of its expert's expected testimony. The purpose of this rule is to "provide opposing counsel with updated and complete discovery regarding the substance of expert testimony[,]" and the rule is "necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced."[3]
But the rule "does not require a party to give notice as to each and every nuance of an expert's opinion."[4] In fact, "subject matter" as used in the rule has been defined as "encompass[ing] a broad scope of information under a general topic, and not to include a detailed accounting of an expert's possible testimony."[5]
 VIII. No Abuse of Discretion
Thus, we must decide whether the subject matter of Bills's trial testimony materially differed from the subject matter of his deposition testimony. Throughout this litigation, Bills has opined that the surge protector was the cause of Faulk's injury. That opinion did not change. Bills has also consistently opined that the building was appropriately wired and grounded. What changed at trial was that Bill was presented with a hypothetical as to what effect an ungrounded electrical system would have had on his conclusion that the surge protector was the cause of Faulk's injuries. He opined that, in that situation, the ungrounding would have resulted in an electric shock to any device plugged into the defective surge protector, whenever a person touched a metal part of the device.
This is not a case where an expert was unable to give an opinion on causation during his deposition, but did so at trial.[6] Nor is it a situation where the expert specifically changed his or her opinion at trial.[7] Further, this is not a case where "the subject matter [of the expert's testimony] [was] revealed for the first time at trial and the opposing party had no reason to anticipate it."[8] In fact, the issue of the consequences of an ungrounded circuit was touched upon in Bills's deposition. Further, since it was obvious that the two experts' opinions were premised on whether the building's electrical system was grounded, we do not believe that Bills's opinion concerning the hypothetical was "an ambush." (What probably did "surprise" Faulk was counsel's effective use of Bills's testimony in IBM's closing argument.) Thus, we conclude that the trial court did not abuse its discretion by failing to grant Faulk's motions. Further, we conclude that Faulk was not materially prejudiced. We overrule both of Faulk's assignments of error.
The issue raised in IBM's cross-appeal is rendered moot by our decision to overrule Faulk's assignments of error. Thus, we need not address the cross-appeal.
The judgment of the trial court is affirmed
Doan, P.J., and Hildebrandt, J., concur.
[1] See Meyers v. Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82,98, 721 N.E.2d 1068, 1079.
[2] See Waste Management, of Ohio, Inc. v. Mid-America Tire, Inc. (1996), 113 Ohio App.3d 529, 533, 681 N.E.2d 492, 494; accord Shumakerv. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367,504 N.E.2d 44.
[3] See Shumaker v. Oliver B. Cannon Sons, Inc. at 370,504 N.E.2d at 47.
[4] See Tritt v. Judd's Moving Storage, Inc. (1990),62 Ohio App.3d 206, 211-212, 574 N.E.2d 1178, 1182-1183.
[5] See Beavercreek Local Schools v. Basic, Inc. (1991),71 Ohio App.3d 669, 680, 595 N.E.2d 360, 367.
[6] See Waste Management, of Ohio, Inc. v. Mid-America Tire, Inc.,supra.
[7] See Fetters v. St. Francis/St. George Hospital, Inc. (Mar. 17, 2000), Hamilton App. No. C-990410, unreported; Wimmers v. Camacho (July 27, 1993), Montgomery App. No. 13272, unreported.
[8] See Fetters v. St. Francis/St. George Hospital, Inc., supra.