[Cite as *Burden v. Lucchese*, 2010-Ohio-3363.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### ALLEN COUNTY

DALE BURDEN, SR.,
ADMINISTRATOR, ETC.,

     PLAINTIFF-APPELLANT,          CASE NO.  1-09-36

     v.

CHRISTOPHER R. LUCCHESE, D.O.,
ET AL.                        O P I N I O N

     DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2005 0315

Judgment Affirmed

Date of Decision:   July 19, 2010

APPEARANCES:

    *Joseph W. O'Neil and Daniel R. Michel*  for Appellant

    *Kevin W. Popham and Gregory B. Foliano*  for Appellees. Semaan
        And X-Ray, Inc.

    *Stephen A. Skiver and Jerome A. McTague, M.D.* for Appellees,
        Lucchese and Holistic Surgical Assoc., Inc.

Case No. 1-09-36

**WILLAMOWSKI, P.J.**

{¶1} Plaintiff-appellant Dale Burden Sr., Administrator for the Estate of Darlene Burden, Deceased ("Burden") brings this appeal from the judgment of the Court of Common Pleas of Allen County in favor of defendants-appellees Christopher Lucchese, D.O. ("Lucchese") and Hassan Semann, M.D. ("Semann"). For the reasons set forth below, the judgment is affirmed.

{¶2} On December 15, 2003, Lucchese performed thyroid surgery on Darlene Burden ("Darlene"). Darlene appeared to be progressing properly and was discharged on December 16, 2003. On December 17, 2003, Darlene went to the Lima Memorial Hospital Emergency Room for substantial swelling to her face that was interfering with her ability to swallow pills or drink fluids. Lucchese used a needle to remove the fluid from the swollen portion of her neck in the morning of December 18, 2003. At approximately 11:00 a.m. on December 18, 2003, the staff notified Lucchese that Darlene's neck was again swelling. Lucchese instructed the staff to take Darlene to radiology for a radiology-guided placement of a drain tube in her neck. Semann performed this procedure around 11:42 a.m. that day. At approximately 11:55 a.m. Darlene stopped breathing and was resuscitated. However, Darlene suffered irreversible brain damage and died three days later.

{¶3} On April 1, 2005, Burden filed a complaint with a jury demand. An amended complaint was filed on April 5, 2005. On May 4, 2005, Lucchese filed his answer to the amended complaint. On December 19, 2005, Burden filed a motion for leave to file a second amended complaint. The motion was granted that same day and the amended complaint was filed. Lucchese filed his answer to the second amended complaint on January 18, 2006. Semaan filed his answer to the second amended complaint on January 30, 2006.

{¶4} The case proceeded to a jury trial from June 1 through June 8, 2009. At the conclusion of the trial, the jury returned a verdict in favor of defendants. Burden appeals from this verdict and raises the following assignments of error.

### First Assignment of Error

**The court erred in allowing expert opinions not disclosed before trial and contrary to opinions given during discovery.**

### Second Assignment of Error

**The trial court erred by excluding [Burden's] rebuttal expert since he was incapable of rebutting the testimony of [Semaan's] radiology expert before his opinions (and the bases of those opinions) were made known to [Burden].**

{¶5} In the first assignment of error, Burden argues that Lucchese and Semaan changed their testimony from that given in their depositions by alleging at trial that the nurses were the ones at fault. Burden claims that they had a duty to supplement their responses if they were going to change their testimony.

> **A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:**
>
> **\* \* \***
>
> **(2) A party who knows or later learns that his response is incorrect is under a duty to seasonably correct the response.**

Civ.R. 26(E). If the subject matter of an expert witness' testimony changes between deposition and trial, the witness is required to supplement his/her response. *Walker v. Holland* (1997), 117 Ohio App.3d 775, 691 N.E.2d 719. "Although Civ.R. 26(E)(1)(b) does not require a party to give an opposing party notice of every nuance of an expert's opinion, it does require supplementation of the subject matter on which an expert is expected to testify." *Waste Mgt. of Ohio, Inc. v. Mid-America Tire, Inc.* (1996) 113 Ohio App.3d 529, 533, 681 N.E.2d 492.

{¶6} During their depositions, both Lucchese and Semaan testified that they did not have an opinion that the nurses were at fault for failing to notify them. At trial, both were asked hypothetical questions concerning the standard of care offered by the nurses. An expert witness may testify to an opinion in response to a hypothetical question. Evid.R. 705. Dr. Lucchese testified on direct exam as follows.

> **A.  Well, the conclusion was that the patient's swelling was returning and was on the left-side of the face.  And so I ordered an ultrasound guided drainage with leave the drain in.  There**

**was nothing in the conversation to make me indicate that there was any other situation going on.**

**\* \* \***

**Q. Did you have any concern at that time for the patient's airway?**

**A. Absolutely not.**

**Q. And why not?**

**A. Well, the nurse in our conversation (sic) there was nothing in our conversation to indicate that the patient was having any respiratory distress, shortness of breath, no respiratory rate increase, pulse oximetry was normal, there was no labored breathing. None of that.**

**\* \* \***

**Q. Had you been told that at 11:00 a.m. that the patient was short of breath what would you have done?**

**A. If there was (sic) signs of that I would have come in and seen the patient and assessed her myself.**

**Q. What was the next information that you got?**

**A. The next thing was I got a page and I answered the page and it was from somebody in CAT scan saying that my patient was coding.**

**Q. Prior to that phone call did anyone call you to say your patient was having respiratory distress?**

**A. No.**

**Q. Did anyone call you to say that the patient was having any other new symptoms?**

**A.** No.

**Q.** Now, Doctor, I want you to assume that the patient did develop respiratory distress, shortness of breath or stridor while on the floor. Would you expect to be called?

**A.** Absolutely.

\* \* \*

**Q.** We were just talking, Doctor, about a hypothetical question I was asking you. We had asked about respiratory distress, shortness of breath and stridor, having you assume that those were the case on the floor. And my question was, would it be below the standard of care for the nursing staff to make such observations and not call you?

**A.** Yes.

Tr. 264-267. Dr. Semaan also testified at trial concerning the standard of care.

**Q.** What was the next information that Dr. Lucchese got?

**A.** I don't believe that Dr. Lucchese had any other information or contact until Mrs. Burden was in the radiology department and was undergoing CPR resuscitation.

\* \* \*

**Q.** Based on your review of the records did anyone call Dr. Lucchese to tell him that his patient was having any respiratory distress?

**A.** No. Not at all.

**Q.** Did anyone call Dr. Lucchese to say that his patient was having any other new symptoms after 11:00 a.m.?

**A.** After 11:00 a.m. not that I'm aware of. The contact was around 10:55 when the nurse talked to Dr. Lucchese. She

**received some orders of what to do next. And those orders were written at 11:00 a.m.**

**Q. And, Doctor, I want you to assume, I want you to make an assumption that the patient did develop respiratory distress, shortness of breath and stridor while on the floor. Would you expect Dr. Lucchese to be called with those changes?**

**A. If those – if that situation had occurred?**

**Q. Yes?**

**A. Yes. If the situation had occurred where she was having respiratory distress and those findings that go along with it, it would have been the appropriate thing to contact Dr. Lucchese.**

**Q. And, Doctor, would it be below the standard of care for the nursing staff to make such observations and not call Dr. Lucchese?**

**\* \* \***

**A. If the nursing staff had observed those findings and – that the patient was having respiratory distress, they thought the patient was in peril and did not call Dr. Lucchese that would be below what we would expect and I would assume below the standard of nursing care.**

Tr. 1015-1018. Although both defendants testified that the failure to notify Lucchese if those symptoms were present would be below the standard of care, they did not testify at trial that the nursing care was substandard or blame the nurses for the problem. The testimony was in response to Burden's assertion that those symptoms were present in the morning. Lucchese and Semaan denied that the symptoms were present or, if present, were not reported to the nursing staff.

The point of their testimony was to show that those symptoms had not occurred. Thus, the testimony was not a correction of a prior statement that would require the deposition testimony to be supplemented. The first assignment of error is overruled.

{¶7} Burden's second assignment of error alleges that the trial court erred by excluding his rebuttal witness, Dr. Douglas Phillips ("Phillips"). "Normally, an appellate court need not consider an error that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court." *State v. Hill* (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274. Thus, a claim of error without it being raised in the trial court below is usually deemed waived. Id. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Hill*, supra at 203.

{¶8} Burden argues that his witness was improperly excluded because he could not provide the rebuttal witness for depositions before the defendants had been deposed. This court notes initially that Burden did not attempt to call Phillips at trial as a rebuttal witness. Tr. 1070. The trial court in this case mandated that Phillips give his deposition before another witness. Based upon

this ruling, Burden determined that Phillips could not function as a rebuttal witness and withdrew him. The failure to attempt to call Phillips means that the trial court did not exclude him from testifying, but rather that Burden chose not to call him. Burden argues that he had no option but to withdraw Phillips because he could not rebut an opinion if no opinion was rendered. Yet, Phillips could still have testified as to whether, in his opinion, Semaan met the standard of care for a physician regardless of what the other opinions were. Phillips could also have been brought in for a second deposition after Semaan's expert was deposed, to rebut any of those opinions. Since Burden did not attempt to call Phillips, he has waived all but plain error. This court notes that there is no proffer of evidence from which to determine whether Phillips testimony would be useful or even relevant. Without any evidence to show that Phillips' testimony would have changed the outcome of the trial, reversal is not warranted. Thus, the second assignment of error is overruled.

{¶9} The judgment of the Court of Common Pleas of Allen County is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**

-9-