[Cite as *Walsh v. Smith*, 2014-Ohio-1451.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

JOHN T. WALSH                               :

    Plaintiff-Appellee                    :          C.A. CASE NO.    25879

v.                                          :          T.C. NO.    12CV8182

TERRY L. SMITH, et al.                      :          (Civil appeal from
                                                       Common Pleas Court)

    Defendants-Appellants                 :

                                            :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the ____4th____ day of ____April____, 2014.

. . . . . . . . . .

RALPH A. SKILKEN, JR., Atty. Reg. No. 0006334, 10 W. Second Street, Suite 1100, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

GARY J. LEPPLA, Atty. Reg. No. 0017172 and PHILIP J. LEPPLA, Atty. Reg. No. 0089075, 2100 S. Patterson Blvd., Dayton, Ohio 45409
    Attorneys for Defendants-Appellants

. . . . . . . . . .

FROELICH, P.J.

    **{¶ 1}**   Terry L. Smith and Jackass Flats, LLC appeal from an order of the

Montgomery County Court of Common Pleas, granting John T. Walsh's motion for the appointment of a receiver.[1]  For the following reasons, the trial court's order will be affirmed.

{¶ 2}  Smith and Walsh jointly purchased the real property located at 6024 Rip Rap Road in Dayton; the property includes a house and a barn, which was remodeled to function as a bar and restaurant.  The bar/restaurant on the property is operated by Jackass Flats, LLC, of which Smith and Walsh are both 50% members.  The original concept for the business was an Australian-themed restaurant; it is currently operated as a "biker bar."  For several years, Smith has operated the business and Walsh has had limited involvement.

{¶ 3}  In November 2012, Walsh brought suit against Smith and Jackass Flats, LLC, asserting claims against Smith for breach of contract, promissory estoppel/unjust enrichment, tortious bad faith, fraud, and conversion.  Walsh also claimed that he was entitled to judicial dissolution of Jackass Flats, LLC, and the appointment of a receiver.  In August 2013, Walsh filed a motion for dissolution of the limited liability company and for appointment of a receiver.  A hearing on the motion for a receiver was held on August 21 and 22.  On August 27, 2013, the trial court granted the motion for a receiver and appointed Matthew Sorg, an attorney, as the receiver.

{¶ 4}  Smith and Jackass Flats appeal from the trial court's decision, raising three assignments of error.  We will address their assignments in an order that facilitates our analysis.

---

[1]  In his appellate brief, Walsh asks this court to conduct a hearing to determine whether there were reasonable grounds for this appeal and for the two motions to stay the proceedings in the trial court.  We find this appeal and the motions to stay to be reasonable.  Walsh's motion is denied.

## I. Appointment of a Receiver

{¶ 5}     Smith and Jackass Flats's first and third assignments of error raise similar issues.  They claim (1) that "[t]he trial court erred in appointing a receiver, notably in the absence of clear and convincing evidence of risk of irreparable loss or injury," and (2) that "[t]he decision reached by the trial court in appointing a receiver constitutes an abuse of discretion."

{¶ 6}     The authority to appoint a receiver is "an extraordinary, drastic and sometimes harsh power which equity possesses."  *Crawford v. Hawes*, 2d Dist. Montgomery No. 23209, 2010-Ohio-952, ¶ 33, quoting *Hoiles v. Watkins*, 117 Ohio St. 165, 174, 157 N.E. 557 (1927).  Due to the extreme nature of the remedy, the movant must demonstrate the need for a receiver by clear and convincing evidence.  *Id.*, citing *Malloy v. Malloy Color Lab, Inc.*, 63 Ohio App.3d 434, 437, 579 N.E.2d 248 (10th Dist.1989).

{¶ 7}     The decision to appoint a receiver is within the trial court's sound discretion.  *Id.*; *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991).  In exercising that discretion, the trial court generally should consider "all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." *Gibbs* at 73, fn.3, quoting 65 American Jurisprudence 2d (1972) 873, 874, Receivers, Sections 19, 20; *Hawes* at ¶ 33. Absent an abuse of discretion, an appellate court will not reverse a decision on whether to appoint a receiver.  *Id.*   A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.  *JPMorgan Chase Bank, N.A. v. Taylor*, 2d Dist. Montgomery No. 25568, 2013-Ohio-2760, ¶ 6, citing *Blakemore v. Blakemore*, 5 Ohio St.3d

217, 219, 450 N.E.2d 1140 (1983).

{¶ 8}    R.C. 2735.01, which governs the appointment of receivers, provides that a receiver may be appointed by the court of common pleas or a judge thereof in his or her county, in the following cases:

(A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject project or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured[.]

{¶ 9}    The trial court's decision thoroughly summarized the evidence at the hearing on Walsh's motion for the appointment of a receiver and made findings of fact, as follows:

Defendant, Terry Smith, testified that, prior to the time Jackass Flats, LLC, was established, he had been in the concession business for over eighteen years.   He and Plaintiff, John Walsh, individually purchased the real property located at 6024 Rip Rap Road, Dayton, Ohio.   When the operation of the bar/restaurant began at the Rip Rap Road property in February, 2003, Smith determined the salary he would be paid without consulting with Walsh.  The parties originally agreed to operate an Australian-themed bar/restaurant, but Smith made the unilateral decision to change the concept of the establishment sometime after it was opened.   Over time the bar/restaurant has become what was described at the oral hearing as a "biker bar."   Smith

testified that he does not believe that Walsh is a 50% owner of Jackass Flats, LLC, despite the fact that the tax returns, prepared at Smith's direction, list Walsh as a 50% owner. Smith admitted that he unilaterally made the decision to tear down an existing structure on the property, despite the fact that he knew Walsh did not want the building torn down. Smith testified that, essentially, he knew more than Walsh so he made the decision to tear down the building. He paid for the new building with "existing funds" and some equity loans. He admitted that Jackass Flats, LLC, has never paid any rent to him or Walsh. The company currently operates without an operating agreement. Smith is willing to sign a lease for the property but is not willing to sign an operating agreement. Smith acknowledged that the liquor license for the business is in his name, but it was placed in his name because he previously had held a liquor license and had finger prints and a background check on file, so it was more convenient for him to obtain the liquor license. Smith acknowledged that he paid the cost of the initial application and license, but each renewal of the license has been paid for from funds of Jackass Flats, LLC.

Smith admitted that Jackass Flats, LLC does not have liability insurance, nor any insurance of any nature. Smith believes that Walsh "abandoned the place" after he moved out of the home on the property. Smith admitted that Walsh did not like the noise from the bar. He claims that Plaintiff has not asked for any documents associated with the business

nor has he taken an interest in the business. Smith testified that he has chosen to use the profits from the business to pay off the equity loans. However, no evidence was introduced at the oral hearing regarding any payments made on the equity loans. Smith claimed that Plaintiff previously had access to the bank accounts of the business but he stated that he noticed that Plaintiff was changing the passwords on the bank account so he closed the operating and other accounts and moved the accounts to banks where Plaintiff would not have access to the accounts. Smith testified that he does not have the daily cash sheets for 2012, except December and he no longer keeps the daily cash sheets after the information recorded in the computer on the record sent to the accountant.

John Walsh testified that he and Smith each paid approximately $75,000 to purchase the real property from American Aggregates. Prior to the time that Smith tore down the existing structure on the property, they had not discussed tearing the building down. Walsh was out of town when the building was torn down. Walsh has not received any rent for the property since October, 2007. He also testified that Smith does not consult with him regarding business decisions or the operation of the bar. Walsh believes that he was barred from the business by Smith approximately five years ago. Walsh has requested daily cash sheets and other documents from Smith, who has not provided them to Walsh. [Smith] told [Walsh] in 2012 that the daily cash sheets blew away in a wind storm and also told Walsh that the records

had been eaten by mice. Without his consent, Smith instituted "bike nights," where many motorcycle riders congregate at the bar. Walsh does not agree with the bar/restaurant catering to bikers, although the highest grossing sales night each week is "bike night." Unfortunately, the daily cash sheets from 2005 and 2006 that have been provided to Walsh demonstrate that the daily cash sheets and the information provided to the accountants do not match up in some instances, resulting in substantial under-reporting of income. Walsh has known there was no insurance on the property since 2003 and attempted to obtain insurance, but was turned down because Smith would not cooperate in obtaining insurance. Sometime in 2007 or 2008 Smith changed the password on all of the bank accounts and moved the accounts to different financial institutions. Thereafter, Walsh had no access to any financial information for the business other than that which was provided through this litigation.

The tax returns prepared at the direction of Terry Smith and presumably filed with the Internal Revenue Service, reveal gross receipts and ordinary business income as follows:

| YEAR | GROSS RECEIPTS | ORDINARY INCOME |
|------|----------------|-----------------|
| 2006 | $867,998.00 | $116,486.00 |
| 2007 | $1,024,986.00 | $41,430.00 |
| 2008 | $927,783.00 | $34,864.00 |
| 2009 | $824,344.00 | -$37,693.00 |

| | | |
|---|---|---|
| 2010 | $788,833.00 | $30,735.00 |
| 2011 | $642,307.00 | -$26,731.00 |

Between 2006 and 2011, Smith unilaterally paid himself as "Compensation of officers" the following amounts:

| | |
|---|---|
| 2006 | $76,600.00 |
| 2007 | $71,700.00 |
| 2008 | $79,200.00 |
| 2009 | $76,800.00 |
| 2010 | $61,200.00 |
| 2011 | $56,800.00 |

Despite being president of the LLC, Walsh was not paid anything during the aforementioned years as "compensation." He has received only one distribution from the company as profits in 2006 in the sum of $47,000.00. Smith received a like amount.

Beth Aker also testified at the oral hearing. She worked at Jackass Flats, LLC from 2003 until 2006 as a bartender, she prepared the books and did inventory and ordering. She has a background in accounting and worked in accounting and finance at Wright Patterson Air Force Base for over eleven years. After reviewing financial information for parts of 2005 and 2006, she concluded that there was under reporting of income from the business by Smith to the accountants for the business in the following amounts:

| | |
|---|---|
| September 2005 | $16,120.00 |

October 2005          $12,151.81

June 2006                    $6,940.66

The most significant discrepancies occurred on Wednesdays, which are known as "bike nights" at Jackass Flats.

Aker testified that at some point prior to the time she left the employment of Jackass Flats, Smith was out of town for an extended period of time and during that time she reported income to the accountants. Upon his return when Smith learned that she had sent complete, unedited information to the accountants, he fired her. Smith claims to have fired Aker because he believed she was drinking on the job. Smith claims that the discrepancies in the daily sheets and the amounts reported to the accountant are as a result of the manager of the business, Jeff, "not knowing how to use a computer" and Jeff did not record cash payouts correctly.

The court finds the testimony of Defendant Smith to be lacking in credibility. It is too coincidental that the days on which there are discrepancies in the recorded sales are also "bike nights," when large amounts of cash come into the business. Smith has exercised sole discretion and authority over the business, despite the fact that he and Walsh are equal owners of the business and the real property. Furthermore, Smith's testimony revealed that he practiced rather lax methods of accounting and management and does not embrace Walsh's equal right to decision making, access to records and the business nor ownership in the business.

The court finds that Plaintiff has proven by clear and convincing evidence that property of the limited liability corporation is in danger of being lost, removed, or materially injured as a result of the actions and inactions of Defendant, Terry Smith. The facts presented bear some resemblance to those confronting the court in *Kunkle v. Kunkle*, [6th Dist. Fulton No. F-07-034,] 2008-Ohio-5804, where partners, who also happened to be family members, disposed of business property and spent funds without the authorization of the partnership. While neither party in this action provided the court with a copy of the LLC agreement, and while Defendant testified that he was the owner of the business, the tax returns for 2006 through 2011, prepared at the direction of Defendant, list John Walsh and Terry Smith each as 50% owners of the entity known as Jackass Flats, LLC. Despite their equal ownership, Defendant acknowledged that he has set his own salary, without consulting with Plaintiff. Defendant admitted that despite the substantial receipts of the business, he has not insured the property or the business. Given that the limited liability corporation operates a bar and maintains kitchen equipment, it is concerning that the Defendant has made the conscious decision not to insure the premises or business. Unlike in *Crawford v. Hawes*, [2d Dist. Montgomery No. 23209,] 2010-Ohio-952, where there was no evidence that insurance was not maintained, here, Defendant acknowledged that the premises and business were not currently insured, and had not been insured for some time. Furthermore, the accounting and financial records maintained by Defendant show either

mismanagement or potentially theft. Substantial discrepancies exist between daily cash sheets and income reported to the accountant for tax and other purposes. Plaintiff has not realized any income from the business in over six years, despite the fact that the business has been profitable in all but two of those years. While Defendant maintains that records were thrown away after they were damaged in a storm, Plaintiff submitted records that he has been provided from 2005 and 2006 which detail substantial underreporting of income. Plaintiff's delay in commencing this action and in requesting a receiver does not obviate the need for a receiver to protect the assets of the limited liability company, nor does it countenance Defendant's continued behavior in effectively excluding Plaintiff from the business. Even though Defendant has begun sharing some information with Plaintiff, that limited cooperation is very recent and does not resolve the ongoing, pervasive conflict over this business and the need to protect the business assets from loss.

{¶ 10} Smith and Jackass Flats claim that the trial court's decision was not supported by clear and convincing evidence and was an abuse of discretion, because Smith "was a capable and effective manager" of Jackass Flats and Walsh's complaints concerned access to the building and business records. They assert that Jackass Flats was operating at a profit and that "there was no evidence that money or profits are in danger of being lost, removed or materially injured in the operation of Jackass Flats, LLC." Smith and Jackass Flats argue that, contrary to the trial court's findings, the facts in this case are analogous to

*Crawford v. Hawes*, 2d Dist. Montgomery No. 23209, 2010-Ohio-952.

{¶ 11}   In *Crawford*, a part-owner of a bar brought suit against his partner for breach of contract and other claims after his employment at the bar was terminated and he was barred from the business.   The bar had been open for two months when the complaint was filed.   The plaintiff sought the appointment of a receiver, and the motion was granted.   We reversed the trial court's decision, concluding that the plaintiff had presented evidence of his financial interest in the property, but failed to demonstrate any danger to the business's profits or money.   We stated:

> The record of the receivership hearing establishes that Crawford [the plaintiff] presented no evidence, other than his unsubstantiated allegations, that [defendants] were stealing money from the bar.   Contrary to Crawford's assertions, [defendant] presented evidence at the hearing which demonstrated that the bar's financial records were being kept by an accountant.   Evidence was also adduced which established that the taxes and insurance on the bar were current, and all of the bar's employees' salaries were also being paid on time.   [Defendant's] testimony suggests that the bar was an ongoing, solvent business.   Crawford failed to establish that any monies or profits generated by the bar were "in danger of being lost, removed, or materially injured."   As movant, Crawford failed to establish by clear and convincing evidence his right to have a receiver appointed.

*Crawford* at ¶ 65.

{¶ 12}   The evidence at the hearing on Walsh's motion reflects that Jackass Flats

operated at a profit for most years, as Smith asserts. However, the evidence further indicated that Smith determined his own salary without consulting with Walsh, and in 2009 and 2011, Jackass Flats operated at a loss, whereas Smith's income was $76,800.00 and $56,800.00, respectively. In addition, despite the fact that Jackass Flats had net income for several years, Walsh received only one distribution from the company. Smith testified that he used Smith Denlinger as the business's accountant, and that he provided financial information to the accountant. However, Walsh provided evidence that there were occasions where the daily sales amounts reported to the accountant were less than the amounts actually collected at Jackass Flats; these typically occurred on "bike night," when cash receipts were higher. Two income tax returns were not timely filed. Moreover, Smith admitted that he had not obtained liability insurance for the bar/restaurant, and Walsh stated that he was unable to obtain insurance for Jackass Flats without Smith's cooperation. Lack of insurance creates a danger of loss or material injury to the business should any catastrophic event, such as a fire or personal injury, occur on the premises.

{¶ 13} Given the facts of this case, we find *Crawford* to be distinguishable. Walsh presented clear and convincing evidence to support his motion to have a receiver appointed, and the trial court did not abuse its discretion in granting the motion for the appointment of a receiver.

{¶ 14} Smith and Jackass Flats's first and third assignment of error are overruled.

## II. Admissibility of Evidence

{¶ 15} Smith and Jackass Flats's second assignment of error claims that the trial court "erred in admitting, considering, and relying upon inadmissible evidence."

**{¶ 16}** The decision whether to admit or exclude evidence is within the sound discretion of the trial court, and "unless the trial court clearly abused its discretion and a party was materially prejudiced as a result, reviewing courts should be slow to interfere." *King v. Niswonger*, 2d Dist. Darke No. 2013-CA-1, 2014-Ohio-859, ¶ 12, quoting *Waste Mgt. of Ohio, Inc. v. Mid-America Tire, Inc.*, 113 Ohio App.3d 529, 533, 681 N.E.2d 492 (2d Dist.1996).

**{¶ 17}** And, a judge conducting a bench trial is given considerable latitude on procedure and evidentiary matters. *State v. Blevins*, 2d Dist. Montgomery No. 24006, 2011-Ohio-381, ¶ 34, citing *Baker v. Fickert*, 2d Dist. Miami No. 95-CA-21, 1995 WL 545368 (Sept. 13, 1995) and *Harold v. Joyner*, 2d Dist. Montgomery No. 19137, 2002-Ohio-3808, ¶ 11. *See also State v. Blanton*, 111 Ohio App. 111, 119, 170 N.E.2d 754 (4th Dist.1960)("The law in Ohio is very clear that the rules as to the admission or exclusion of evidence are different when a case is being tried without a jury or by a three-judge court sitting as both judge and jury.") Without some affirmative indication in the record to the contrary, an appellate court presumes that a trial court considers only relevant and competent evidence. *Blevins* at ¶ 34, citing *State v. Sieng*, 2d Dist. Clark No. 2003 CA 35, 2003-Ohio-7246, ¶ 32.

**{¶ 18}** Smith first raises the following exchange during Walsh's testimony on direct examination:

Q.    All right.  And if you did not have a discussion with Mr. Smith about removing this building, what were the circumstances that he could do that without discussing it with you?

A.      Like I mentioned previously, I have a full-time occupation and during an absence on business, he unilaterally demolished the building, and he was known to remark to his cronies, when I heard when I came back –

[Smith's counsel]:      Objection.

[Walsh]: Saying that, "he's going to be mad."

THE COURT: Overruled.   Go ahead, sir.

[Smith's counsel]:      Your Honor, I seriously object.

THE COURT: It's – there's no jury here.   I understand the animosity between the two parties.   I can listen through that and hear the facts.   Go ahead.

The trial court's response to counsel's second objection reflects that the trial court would not consider the specific negative characterizations and any improper portion of Walsh's answer.

{¶ 19}   Counsel for Smith later objected to Walsh's testimony regarding Exhibit 9, which consisted of a spreadsheet used by Jackass Flats to report sales for September 2005, daily cash sheets for each day of September, and a handwritten summary page comparing the total receipts on the spreadsheet versus the daily cash sheets.   The handwritten summary page was prepared at Walsh's request by Beth Aker, a former employee of Jackass Flats. Counsel objected to Walsh's testimony regarding the exhibit, stating first that Walsh did not understand the forms and, second, that Walsh did not prepare the summary page.   The trial court overruled the objections.

{¶ 20}   As to counsel's first objection, Walsh testified that he recognized the form and the daily cash sheets as documents typically used by Jackass Flats.   Smith had previously testified that the spreadsheet and daily cash sheets were business records of

Jackass Flats. The summary page merely took information from the spreadsheet and daily cash sheets so that there was a clear comparison of the total receipts as reported on the different forms. The information on the summary page was readily available to the court from the other documents contained in the exhibit. Moreover, even assuming that Walsh should not have testified about the summary sheet, former employee Beth Aker later testified that she prepared the summary page from the spreadsheets and daily cash sheets, which were business records of Jackass Flats. The trial court did not abuse its discretion in admitting the evidence.

{¶ 21} Walsh subsequently testified about the spreadsheet, daily cash reports, and a handwritten summary comparison page contained in Exhibits 10 and 11, which concerned October 2005 and June 2006, respectively. Smith's counsel again objected to Walsh's testimony regarding the summary comparison page. For the reasons stated above, we find no abuse of discretion in the trial court's consideration of these pages.

{¶ 22} Smith next complains that the trial court allowed Walsh to testify that he "had a good idea" that sales were being under-reported. There is no indication that the trial court relied on Walsh's testimony; rather, the trial court had before it the monthly spreadsheet and the daily cash reports, both business records of Jackass Flats, from which it could reach that conclusion.

{¶ 23} Finally, Smith and Jackass Flats claim that the trial court relied on inadmissible evidence to conclude that Smith received a distribution of approximately $47,000 through two checks. Smith testified that, in 2007, he and Walsh each received two checks totaling approximately $47,000. Smith stated that Walsh cashed both of his

(Walsh's) checks; Smith, on the other hand, cashed one check but was unable to cash the second check of $23,473. Smith explained that there was not enough money in the bank account to cash it.

{¶ 24} Walsh presented, as Exhibit 13, a letter dated September 8, 2008, from Smith's former counsel to Walsh's counsel, which stated, "As you know, your client took close to $47,000 at a time when he shouldn't have based on what we believe was his claim to the 2006 profits. Mr. Smith has recently cashed his check so that both parties have taken approximately $47,000." Smith testified that the statement in the letter about Smith's cashing the check was incorrect. However, the letter was admitted into evidence without objection.

{¶ 25} We find no abuse of discretion in the trial court's admission of evidence in this case. In addition, we find no indication that the trial court relied upon inadmissible evidence, to the prejudice of Smith. The second assignment of error is overruled.

### III.  Conclusion

{¶ 26} The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Ralph A. Skilken, Jr.
Gary J. Leppla
Philip J. Leppla
Hon. Mary Katherine Huffman