[Cite as *State v. Hottenstein*, 2015-Ohio-4787.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

STATE OF OHIO                              :
                                                        :
        Plaintiff-Appellee                    :        C.A. CASE NO.   2014-CA-113
                                                        :
v.                                                      :        T.C. NO. 14CR132
                                                        :
JORDAN M. HOTTENSTEIN             :        (Criminal Appeal from
                                                        :         Common Pleas Court)
        Defendant-Appellant               :
                                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___20th___ day of ____November____, 2015.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

RICHARD E. MAYHALL, Atty. Reg. No. 0030017, 20 S. Limestone Street, Suite 120, Springfield, Ohio 45502
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, P.J.

        {¶ 1} Jordan M. Hottenstein was convicted after a bench trial in the Clark County Court of Common Pleas of falsification to obtain a concealed handgun license, in violation of R.C. 2921.13(A)(14), a felony of the fourth degree.  The trial court sentenced Hottenstein to five years of community control.

{¶ 2} Hottenstein appeals from his conviction, claiming that the trial court erred in excluding proffered testimony and that his conviction was based on insufficient evidence. For the following reasons, the trial court's judgment will be vacated.

## I. Factual and Procedural History

{¶ 3} On December 1, 2013, Hottenstein submitted a State of Ohio Application for License to Carry a Concealed Handgun.   Question 8B of the application asked:

Have you ever been adjudicated a delinquent child for committing an act that would, if committed by an adult, be an offense under ORC 2925, 3719, or 4529, that involves illegal possession, use, sale, administration, distribution of or trafficking in a drug of abuse, except for an adjudication the records of which a court has ordered sealed or expunged or relative to which a court has granted relief from disability pursuant to ORC 2923.14?

Hottenstein responded to Question 8B by checking "No."

{¶ 4} Section VI of the application provided notice that "an applicant who knowingly gives a false answer to any question or submits false information on, or a false document with, the application may be prosecuted for falsification to obtain a concealed handgun license, a felony of the fourth degree, in violation of ORC 2921.13."   (Use of all capital letters omitted.)   By signing the application, Hottenstein agreed that the "information contained in this application and all attached documents is true and correct to the best of my knowledge."   Hottenstein signed the application.

{¶ 5} On February 24, 2014, Hottenstein was indicted on falsification to obtain a concealed handgun license, in violation of R.C. 2921.13(A)(14).   In a bill of particulars, the State indicated that Hottenstein had been "adjudicated a delinquent child for drug

abuse in Clark County Juvenile Court in case number 2007[-] 2119."

{¶ 6} Prior to trial, Hottenstein indicated that he intended to call Jane Skogstrom, the magistrate who handled Hottenstein's juvenile case, as a witness. The State filed a motion in limine to exclude any testimony contesting Hottenstein's delinquent child adjudication in Case No. 2007-2119. The State argued that the adjudication was a final appealable order and that any challenge to the adjudication should have been made to the court of appeals in the juvenile case. The trial court granted the State's motion.

{¶ 7} At trial, the State introduced the complaint in the juvenile case (State's Exhibit 4), a certified copy of a journal entry for what appears to have been an adjudication hearing (State's Exhibit 3), and a certified copy of the juvenile court's judgment entry in Case No. 2007-2119 (State's Exhibit 2). The parties stipulated to the "admissibility and authenticity of the Juvenile Court records for the defendant, Jordan Hottenstein, in case number 20072119" and that the juvenile case had not been sealed or expunged. They further stipulated to the authenticity and admissibility of the concealed handgun license application and that the document accurately depicted the application as completed and submitted by Hottenstein on December 1, 2013. The stipulation was admitted as Joint Exhibit A.

{¶ 8} The State called James Stouffer, the Concealed Carry Administrator for the Clark County Sheriff's Office, as a witness. Stouffer testified that he recalled receiving a concealed carry application from Hottenstein and, as part of his duties, he conducted a background check on Hottenstein. Stouffer stated that he inquired in the juvenile court and received a judgment entry (State's Exhibit 2) for Hottenstein in Case No. 2007-2119. Stouffer testified that the charge was listed as "drug abuse" and that this charge would

disqualify Hottenstein for a concealed carry license. Stouffer read paragraph 8B of the application and indicated that Hottenstein marked "no" as his answer. Stouffer notified Hottenstein by certified mail that his application had been denied and the reason for his denial. Stouffer received the certified mail receipt, but did not receive any response from Hottenstein.

{¶ 9} After the State rested, the defense called Jane Skogstrom to testify. The State objected to Skogstrom's anticipated testimony regarding juvenile court procedure. The court sustained the State's objection, but permitted defense counsel to proffer what Skogstrom's anticipated testimony would be. Defense counsel stated:

> Your Honor, if Janie Skogstrom were called to testify, she would testify that she's been a licensed attorney in Ohio since 1980; that she's a retired magistrate from the Clark County Common Pleas Court, Juvenile Division; that she served as a magistrate in that court for approximately 15 years. She would testify that, as part of her duties as a magistrate, she routinely handled the adjudication of juvenile delinquency and dependency cases.

> She would testify that the term "adjudication" is a term of art in juvenile court and that adjudication is governed by Juvenile Rule 29. She would testify that before a child can be adjudicated delinquent or dependent, the Court must conduct a hearing pursuant to Juvenile Rule 29. She would further testify that an adjudicatory hearing is separate and distinct from a dispositional hearing. A dispositional hearing is covered by Juvenile Rule 34.

She would testify that she presided over the adjudicatory hearing of Jordan Hottenstein in Case No. 20072119 but that she does not now have an independent recollection of that case. She would testify that she had examined State's Exhibit 3, and she would testify that that exhibit is the form used in juvenile court for adjudicatory hearings and was the form that was completed in Defendant's case in Case No. 20072119. And she would testify that the form provides that a juvenile can be adjudicated either delinquent or unruly. She would testify that a child cannot be adjudicated both unruly and delinquent on a single charge. She would testify that Exhibit 3 does not specify whether Jordan Hottenstein was adjudicated delinquent or unruly in Case No. 20072119.

The defense rested without calling Hottenstein or any other witnesses.

{¶ 10} Upon considering the testimony and the exhibits, the trial court orally found that Hottenstein was adjudicated a delinquent child in the juvenile court for "possession of a drug of abuse" and that Hottenstein was guilty of falsification. In its written verdict, the trial court found that, "[w]hen read as a whole, both the record of the adjudication and disposition hearings, The Juvenile Court records showed the defendant had been adjudicated delinquent for possession of marihuana as a first degree misdemeanor as a result of an amended charge at the adjudication hearing." The trial court thus found that Hottenstein "had been adjudicated a delinquent child for committing an act that would, if committed by an adult, be an offense under ORC 2925 involving the illegal possession of a drug of abuse. His response to question 8B on the application was false." The trial court found Hottenstein guilty of falsification to obtain a concealed carry license, and it

subsequently filed a judgment entry of conviction for the falsification charge.

{¶ 11} Hottenstein appeals from his conviction, raising two assignments of error.

## II. Exclusion of Proffered Testimony

{¶ 12} Hottenstein's first assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN EXCLUDING THE PROFFERED TESTIMONY OF RETIRED MAGISTRATE JANIE SKOGSTROM.

{¶ 13} The decision whether to admit or exclude evidence is within the sound discretion of the trial court, and "unless the trial court clearly abused its discretion and a party was materially prejudiced as a result, reviewing courts should be slow to interfere." *King v. Niswonger*, 2d Dist. Darke No. 2013-CA-1, 2014-Ohio-859, ¶ 12, quoting *Waste Mgt. of Ohio, Inc. v. Mid-America Tire, Inc.*, 113 Ohio App.3d 529, 533, 681 N.E.2d 492 (2d Dist.1996). And, a judge conducting a bench trial is given considerable latitude on procedural and evidentiary matters. *Walsh v. Smith*, 2d Dist. Montgomery No. 25879, 2014-Ohio-1451, ¶ 17. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} Hottenstein argues that the trial court abused its discretion in excluding Skogstrom's testimony, because he was entitled to present evidence that he had not been "adjudicated" a "delinquent child." We find no abuse of discretion in the trial court's exclusion of Skogstrom's testimony.

{¶ 15} It is well established that a court speaks through its journal entries. *E.g., Infinite Security Solutions, L.L.C. v. Karam Properties, II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 29; *Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454,

455, 727 N.E.2d 907 (2000); *State v. Smith*, 2d Dist. Montgomery No. 26217, 2015-Ohio-700, ¶ 10; *State v. Franklin*, 2d Dist. Montgomery No. 25677, 2013-Ohio-5164, ¶ 12. Accordingly, whether Hottenstein was, in fact, adjudicated a delinquent child for committing an offense that would violate R.C. Chapter 2925 was a matter to be determined by reference to the record in the juvenile court case.

{¶ 16} Hottenstein's first assignment of error is overruled.

### III. Sufficiency of the Evidence of Prior Adjudication

{¶ 17} Hottenstein's second assignment of error states:

BECAUSE THE STATE FAILED TO PROVE THAT THE APPELLANT HAD BEEN "ADJUDICATED" A DELINQUENT THE TRIAL COURT'S GUILTY VERDICT IS NOT SUPPORTED BY THE EVIDENCE AND SHOULD BE REVERSED.

{¶ 18} Hottenstein's second assignment of error challenges the sufficiency of the State's evidence.

{¶ 19} An argument based on the sufficiency of the evidence challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Under a sufficiency analysis, an appellate court does not make any determinations regarding the credibility of witnesses. *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 20} R.C. 2921.13(A)(14) generally prohibits persons from knowingly making a false statement when the statement is made in an application filed with a county sheriff in order to obtain or renew a concealed handgun license. The State's case was based on Hottenstein's statement in his application that he not been "adjudicated a delinquent child for committing an act that would, if committed by an adult, be an offense under ORC 2925, 3719, or 4529, that involves illegal possession, use, sale, administration, distribution of or trafficking in a drug of abuse."

{¶ 21} State's Exhibit 4, the juvenile complaint, states that Hottenstein "appears to be a delinquent child in that on or about November 15, 2007, * * * JORDAN HOTTENSTEIN did: knowingly sell or offer to sell a controlled substance." The complaint specified that Hottenstein "was found to have two baggies of marijuana inside his front pant pocket while attending school," and the complaint charged him with trafficking in drugs, in violation of R.C. 2925.03(A)(1)/ R.C. 2152.021. The complaint indicated that the quantity of drugs involved was two grams.

{¶ 22} State's Exhibit 3, titled "journal entry/court record," indicates that Hottenstein appeared in juvenile court on December 13, 2007 for a detention hearing.[1] The exhibit states that Hottenstein "knowingly and voluntarily admitted the facts alleged

---

[1] A "detention hearing" is a hearing to determine whether a child will be held in detention or shelter care prior to or pending execution of a final dispositional order. Juv.R. 2(L).

in the complaint(s) and he/she is found delinquent/unruly by virtue of a violation of" R.C. 2925.03(A)(1). There is a handwritten notation that the offense was "amended to drug abuse – M1" and "charge is not legally trafficking." The disposition written on the form included five HOPE sessions, two anger management sessions, 90 days of detention (suspended), and 40 hours of community service. The document appears to have been signed by Magistrate Skogstrom. State's Exhibit 3 is certified by the deputy clerk as a true copy of the original filed on December 13, 2007; however, the document does not have a file-stamp indicating that it was, in fact, filed on December 13, 2007 in the juvenile court.

{¶ 23} Hottenstein's brief refers to Exhibit 3 as an adjudication entry. Adjudication hearings include advisement of the charges, appointment of counsel (if not waived), and entry of an admission or denial. Juv.R. 29. If an admission is made at the adjudication hearing, the court may proceed directly to disposition under Juv.R. 29(F). Exhibit 3 describes Hottenstein's admission to the charge, as amended to "drug abuse," and disposition. Although Exhibit 3 refers to a detention hearing, the substance of Exhibit 3 appears to reflect that the December 13, 2007 hearing was an adjudication hearing.

{¶ 24} State's Exhibit 2 is a certified copy of the "judgment entry," dated December 13, 2007, in Case No. 2007-2119. The entry states that Hottenstein was before the juvenile court "for disposition." The court found that Hottenstein had been "properly advised of his/her rights," that "the child has been adjudicated a(n) Delinquent child as alleged in the complaint filed in this action," and that "all parties have been given an opportunity to be present and present their arguments for and against the child in this

action." The caption of the judgment entry stated the charge as "drug abuse." Similar to the adjudication entry, the judgment entry ordered that Hottenstein attend five HOPE sessions, obtain anger management and follow any recommended counseling, serve 90 days of detention (suspended), serve 40 hours of community service, and be referred to the mentoring program.

{¶ 25} We note that the parties have not provided a copy of the juvenile court docket in Case No. 2007-2119, and it is unclear whether Exhibits 2 through 4 constitute the entire juvenile court record.

{¶ 26} On appeal, Hottenstein states that Exhibit 3 is the magistrate's adjudication entry in his juvenile case, and there is nothing in the entry that indicates that Hottenstein was adjudicated a "delinquent" child, as opposed to an "unruly" child. Hottenstein further states that the charge was amended to "drug abuse," but there is no offense within R.C. Chapter 2925 that is titled "drug abuse."

{¶ 27} At the outset, we again emphasize that a court speaks through its journal entries. "Neither the parties nor a reviewing court should have to review the trial court record to determine the court's intentions. Rather, the entry must reflect the trial court's action in clear and succinct terms." *Infinite Security Solutions, L.L.C.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, at ¶ 29. At times, a court's judgment entry may fail to accurately represent what occurred in the case. Nevertheless, the terms of the judgment entry remain in effect until it is properly corrected. *See, e.g.*, *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924 (discussing the correction of criminal sentences).

{¶ 28} "Juvenile court judges are given the authority to appoint magistrates

pursuant to Juv.R. 40, and the authority of juvenile court magistrates is both established in and limited by the Rule." *In re C.B.*, 2d Dist. Montgomery No. 23615, 2010-Ohio-2129, ¶ 23. Pursuant to Juv.R. 40(D)(4)(a), a magistrate's decision is "not effective unless adopted by the court." And, the juvenile court is required to enter its own judgment entry. Juv.R. 30(D)(4)(e).

{¶ 29} The State offered Exhibit 2 as the judgment entry in Hottenstein's juvenile case.[2] The adjudication entry (Exhibit 3) was signed by a magistrate, and nothing in the record indicates that it was adopted by the juvenile court judge. The judgment entry in the juvenile case should not be read "as a whole" with the complaint and adjudication entry to determine whether Hottenstein had a disqualifying adjudication. Rather, the juvenile court's judgment entry (Exhibit 2) is the only relevant entry to determine whether Hottenstein was adjudicated a "delinquent child" for "committing an act that would, if committed by an adult, be an offense under ORC 2925, 3719, or 4529, that involves illegal possession, use, sale, administration, distribution of or trafficking in a drug of abuse." *Accord* R.C. 2945.75(B)(1) ("Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.").

{¶ 30} Beginning with Hottenstein's argument that he was not adjudicated a

---

[2] The printed name under the signature line on the judgment entry states the name of the juvenile court judge, but the handwritten signature is similar to the magistrate's signature on the adjudication entry. If the judgment entry were not signed by the juvenile court judge, the judgment entry would be void, and Hottenstein would not have a juvenile adjudication. Nevertheless, in the absence of evidence that the juvenile court judge did not sign the judgment entry, we hesitate to conclude that the juvenile court's judgment entry is void.

"delinquent child," the terms "delinquent child" and "unruly child" have distinct definitions. A "delinquent child" includes, among other things, any child "who violates any law of this state or the United States, or any ordinance of a political subdivision of the state, that would be an offense if committed by an adult." Juv.R. 2(I); R.C. 2152.02(F)(1). In contrast, an "unruly child" includes any child who (1) "does not submit to the reasonable control of the child's parents, teachers, guardian, or custodian, by reason of being wayward or habitually disobedient;" (2) "is an habitual truant from school and who previously has not been adjudicated an unruly child for being an habitual truant;" (3) "behaves in a manner as to injure or endanger the child's own health or morals or the health or morals of others;" and (4) violates a law (other than certain enumerated sections) that is applicable only to a child. R.C. 2151.022; Juv.R. 2(PP). Here, the juvenile court's judgment entry (Exhibit 2) specifically found that Hottenstein was adjudicated a delinquent child. Thus, the State presented sufficient evidence that Hottenstein was adjudicated a delinquent, as opposed to an unruly, child.

{¶ 31} As for whether Hottenstein was adjudicated for "an offense under ORC 2925, 3719, or 4529, that involves illegal possession, use, sale, administration, distribution of or trafficking in a drug of abuse,"[3] the caption of the juvenile court's judgment entry lists the charge simply as "drug abuse." R.C. Chapter 2925 defines a "drug abuse offense" as theft of drugs under R.C. 2913.02 or "a violation of section 2925.02, 2925.03, 2925.04, 2925.041, 2925.05, 2925.06, 2925.11, 2925.12, 2925.13, 2925.22, 2925.23, 2925.24, 2925.31, 2925.32, 2925.36, or 2925.37 of the Revised Code."

---

[3] The term "drug of abuse" includes "any controlled substance." R.C. 2925.01(B), incorporating the definition in R.C. 3719.011(A).

R.C. 2925.01(G). R.C. 2925.03 addresses trafficking offenses. R.C. 2925.11 prohibits obtaining, possessing or using a controlled substance.

{¶ 32} Prior to Senate Bill 2, effective July 1, 1996, a person who violated R.C. 2925.11 was guilty of "drug abuse," and the degree of the offense varied based on the type and quantity of the drug involved and whether the offender had previously been convicted of drug abuse. Former R.C. 2925.11(C). Senate Bill 2 revised R.C. 2925.11 and created separately-named offenses related to obtaining, possessing or using a controlled substance, based on the drug involved: aggravated possession of drugs (R.C. 2925.11(C)(1)), possession of drugs (R.C. 2925.11(C)(2)), possession of marihuana (R.C. 2925.11(C)(3)), possession of cocaine (R.C. 2925.11(C)(4)), possession of L.S.D. (R.C. 2925.11(C)(5)), possession of heroin (R.C. 2925.11(C)(6)), and possession of hashish (R.C. 2925.11(C)(7)).

{¶ 33} At the time of Hottenstein's juvenile adjudication in December 2007, the offense of "drug abuse" did not exist. The trial court in this case noted that drug abuse "is the term this Court's been used to being used, the same as possession of drugs," but there was no additional information in the juvenile court's judgment entry to clarify the adjudication under then-existing R.C. Chapter 2925. The judgment entry made no reference to the statutory section that formed the basis for the adjudication, the controlled substance involved (i.e., marihuana), or the degree of the offense. The body of the judgment entry simply stated that Hottenstein was adjudicated a delinquent child "as alleged in the complaint filed in this action." In our view, the judgment entry was insufficient to establish that, in December 2007, Hottenstein was adjudicated for "an offense under ORC 2925, 3719, or 4529, that involves illegal possession, use, sale,

administration, distribution of or trafficking in a drug of abuse." Accordingly, the State's evidence was not sufficient to support a conviction for falsification, based on Hottenstein's answer to Question 8B.

{¶ 34} Even if we were to consider all of the juvenile court documents "as a whole" and to construe Hottenstein's adjudication for "drug abuse" to be an offense under R.C. Chapter 2925, we nevertheless question whether the State's evidence supports a conviction for falsification in this case. According to the juvenile complaint (Exhibit 4), the amount of marijuana involved in the juvenile case was two grams. Under R.C. 2925.11(C)(3)(a), possession of marijuana is a minor misdemeanor, except as otherwise provided in R.C. 2925.11(C)(b)-(g). The minimum amount of marijuana required to elevate possession of marijuana to a fourth-degree misdemeanor is 100 grams.

{¶ 35} The juvenile court's judgment entry adjudicated Hottenstein for "drug abuse." Although the magistrate's adjudication decision stated that the charge of trafficking in drugs was reduced to a first-degree misdemeanor, the judgment entry did not indicate the degree of the offense. Rather, it found that Hottenstein was adjudicated a delinquent child "as alleged in the complaint filed in this action." Based on the amount of marijuana involved, as alleged in the complaint, the adjudication was a minor misdemeanor.

{¶ 36} R.C. 2923.125(D)(5) addresses the effect of a minor misdemeanor offense for purposes of a concealed carry application. It provides:

If an applicant has been convicted of or pleaded guilty to a minor misdemeanor offense or has been adjudicated a delinquent child for committing an act or violation that is a minor misdemeanor offense, the

sheriff with whom the application was submitted *shall not consider* the conviction, guilty plea, or adjudication in making a determination under division (D)(1) or (F) of this section or, in relation to an application for a concealed handgun license on a temporary basis submitted under section 2923.1213 of the Revised Code, in making a determination under division (B)(2) of that section.

(Emphasis added.) We have stated that, "[b]ased on the language of R.C. 2923.125(D)(5), it is the intent of the legislature that only convictions for a drug-related criminal offense greater than a minor misdemeanor be considered in the application process for a obtaining a license to carry a concealed weapon." *Salgado v. Montgomery Cty. Sheriff's Office*, 2d Dist. Montgomery Nos. 26502, 26572, 2015-Ohio-3387, ¶ 19. Under the circumstances presented, the law did not allow the Sheriff to deny Hottenstein a concealed carry license based on a juvenile adjudication for drug possession that was a minor misdemeanor. *See id.*

{¶ 37} This interpretation is consistent with the Ohio legislature's efforts to lessen the legal impact of possession of small amounts of marijuana. For example, effective September 30, 2011, the legislature amended R.C. 2925.13, the having weapons while under disability statute, "to eliminate the prohibition against persons with certain misdemeanor drug offense convictions acquiring or possessing firearms or dangerous ordnance." 2011 H.B. 54. H.B. 54 changed disqualifying drugs offenses from "any offense" to "any felony offense" involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. Thus, the offense of having weapons while under disability can no longer be predicated on a misdemeanor drug offense. *See*

R.C. 2925.13(A)(3). *Contrast State v. Stone*, 2d Dist. Montgomery No. 24294, 2011-Ohio-3617 (holding, in a pre-H.B. 54 decision, that minor misdemeanor marijuana possession constituted a disability for purposes of R.C. 2925.13(A)(3)).

{¶ 38} Pursuant to R.C. 2923.125(D)(5), the Sheriff could not deny Hottenstein's concealed carry application based on a minor misdemeanor juvenile adjudication. Consequently, whether Hottenstein had a minor misdemeanor adjudication for possession of marijuana should not have affected the sheriff's determination of whether to grant Hottenstein's application.

{¶ 39} Hottenstein's second assignment of error is sustained.

### IV. Conclusion

{¶ 40} The trial court's judgment will be vacated.

. . . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Ryan A. Saunders
Richard E. Mayhall
Hon. Richard J. O'Neill