[Cite as *State v. Dalton*, 2019-Ohio-4364.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28262 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1340 |
| | : | |
| MARK DALTON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Following a bench trial, the trial court found Mark Dalton guilty of one count of retaliation (against victim) in violation of R.C. 2921.05(B), a third-degree felony, and sentenced him to 24 months in prison, to be served consecutively to his sentence in Montgomery County C.P. No. 2017 CR 3384. The judgment of the trial court will be affirmed.

## Factual and Procedural Background

{¶ 2} On March 28, 2018, Dalton pled guilty in Case No. 2017 CR 3384 to one count of gross sexual imposition (by force) in violation of R.C. 2907.05(A)(1), a fourth-degree felony. That charge related to an incident that occurred in February 2017 and involved K.R., who was a minor at the time of the offense. According to K.R., after the incident of sexual abuse, Dalton "said if I (K.R.) told anyone, he was going to kill me." (Tr. p. 17.) She nonetheless reported the incident to the police about eight days after it occurred.

{¶ 3} Prior to sentencing in Case No. 2017 CR 3384, Dalton was screened at the Montgomery County jail by Laurie Johnson, a screening specialist and clinician with the MonDay Community Correctional Institution ("MonDay"), to determine if he would be eligible for the MonDay program as an alternative to traditional incarceration. Johnson reported that while she was questioning Dalton about his mental health status, Dalton told her "he had a [sic] suicidal ideation after he was charged with this [gross sexual imposition] offense because it was so devastating for him." (Tr. p. 43.) Johnson said that Dalton then spoke about the victim (K.R.), stating, "When I get out, I will retaliate; there will be blood; I will kill her; she must know what she has done to me." (Id. at 44.) Johnson said she wrote down Dalton's words verbatim; she also described Dalton as angry and

his tone as flat when he spoke those words.

{¶ 4} Johnson testified that her position entails a duty to disclose instances when a defendant threatens to harm him/herself or another person. She therefore reported Dalton's comments about self-harm to Samaritan Behavioral Health[1] and his comments about the victim to a supervisor at MonDay. Johnson said she thereafter related Dalton's comments about K.R. to Detective Joshua Spears, who had investigated the gross sexual imposition case, and to the trial judge to whom that case was assigned. She prepared a report informing the judge that Dalton had been rejected as a candidate for the MonDay program due to his comments. (*See* Tr. Exh. 3.) Dalton subsequently was charged with retaliation, and the new case was assigned to a different judge.

{¶ 5} Dalton waived a jury as to the retaliation charge. At his bench trial, both K.R. and Johnson testified regarding the separate threats each personally heard Dalton make against K.R.[2] K.R. also testified that the prosecutor from the gross sexual imposition case advised her about the later threat Dalton made while awaiting sentencing. In addition, Kelsie Carson, the assistant prosecutor from the earlier case, testified that information communicated to her about the statements Dalton made caused her to be concerned for K.R.'s safety. She said she communicated with K.R. and K.R.'s grandmother to relay her concerns and to discourage them from appearing for Dalton's sentencing.

{¶ 6} Finally, Det. Spears testified that he had participated in the investigation of

---

[1] Johnson later explained that Samaritan Behavioral Health manages mental health concerns reported among inmates at the jail. (Tr. pp. 72-73.)

[2] Although Dalton apparently did object to K.R.'s testimony about threats Dalton made directly to her (*see* Tr. p. 84-85), Dalton did not object to Johnson's trial testimony on the subject of Dalton's statements during his MonDay screening. (*See* Tr. pp. 22-83.)

K.R.'s allegations against Dalton. He said that sometime after Dalton's guilty plea to gross sexual imposition, Johnson contacted him (Spears) to advise him that Dalton "had made a threat that he would retaliate against [K.R.]; he would kill her; he would seek vengeance[;] and there would be blood." (Tr. pp. 98-99.) Det. Spears said he viewed that threat as significant because Dalton reportedly had made similar statements to the victim "multiple times." (*Id.*, p. 99.) Det. Spears contacted prosecutor Carson, K.R., K.R.'s grandmother, and K.R.'s victim advocate to make them aware of Dalton's latest threat.

{¶ 7} Dalton did not testify and presented no witnesses or exhibits. The trial court permitted, and both parties filed, post-trial briefs regarding the relevant issues. In his post-trial brief, Dalton asserted for the first time that Johnson should not have been permitted to testify about any statements Dalton made during the MonDay screening, given certain representations made within MonDay's forms as to the confidentiality of information provided. (*See* Tr. pp. 120-124.) The trial court found Dalton guilty of retaliation as charged. The court's final judgment of conviction sentenced him to 24 months in prison, to be served consecutively to his sentence in Case No. 2017 CR 3384.

{¶ 8} Dalton appeals from that judgment, raising two assignments of error:

1) The trial court erred in finding [Dalton] guilty for retaliation (against victim) when the statements that inculpated [Dalton] were improperly admitted.

2) The trial court erred in finding [Dalton] guilty for retaliation (against victim) when the conviction is against the manifest weight of the evidence.

**Assignment of Error #1 – Improper Admission of Evidence**

{¶ 9} R.C. 2921.05(B) provides that "[n]o person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a

crime because the victim filed or prosecuted criminal charges." Dalton was convicted under that provision based on Johnson's testimony that Dalton, during the MonDay screening process, told Johnson that when he was released, he would "retaliate" by killing the victim of his sexual abuse for "what she ha[d] done" to him. (*See* Tr. p. 45.)

{¶ 10} Dalton now contends that Johnson's testimony was admitted in contravention of federal confidentiality rules that prohibit the disclosure of information provided by a patient for purposes of diagnosis, treatment, or referral for treatment, *see* 42 C.F.R. 2.1-2.12, and that the admission of that evidence amounted to plain error. In support of his argument, Dalton advances language that appears on a waiver form he and Johnson signed in relation to the MonDay screening. Through that form, entitled "Authorization for Release of Information," Dalton expressly authorized MonDay to disclose "Confidential Patient Information" to the Montgomery County Common Pleas Court. (*See* Tr. State's Exh. 1a.) The same form further provided in pertinent part:

> * * * This information has been disclosed/exchanged to/with you from records protected by Federal Confidentiality Rules (42 CFR Part 2). The Federal rules prohibit you from making any further disclosure of the information unless further disclosure [is] expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR part 2. * * * The Federal rules restrict any use of the information to criminally investigate or prosecute any alcohol or drug abuse patient.

(*Id.*)

{¶ 11} The decision whether to admit or exclude evidence is within the sound discretion of the trial court, and "unless the trial court clearly abused its discretion and a

party was materially prejudiced as a result, reviewing courts should be slow to interfere." *State v. Hottenstein*, 2015-Ohio-4787, 43 N.E.3d 463, ¶ 13 (2d Dist.), citing *King v. Niswonger,* 2d Dist. Darke No. 2013-CA-1, 2014-Ohio-859, ¶ 12, quoting *Waste Mgt. of Ohio, Inc. v. Mid-America Tire, Inc.,* 113 Ohio App.3d 529, 533, 681 N.E.2d 492 (2d Dist.1996). A judge conducting a bench trial also is given considerable latitude as to procedural and evidentiary matters. *Id.*, citing *Walsh v. Smith,* 2d Dist. Montgomery No. 25879, 2014-Ohio-1451, ¶ 17. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 12} Failure to object to the admission of evidence waives all but plain error. *State v. Rhines*, 2d Dist. Montgomery No. 24203, 2011-Ohio-3615, ¶ 18, citing *State v. Ballew*, 76 Ohio St.3d 244, 251, 776 N.E.2d 369 (1996). "Plain error exists 'if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings.' " *State v. Kessel*, 2019-Ohio-1381, ___ N.E.3d ___, ¶ 33 (2d Dist.), quoting *State v. Bahns*, 185 Ohio App. 3d 805, 2009-Ohio-5525, 924 N.E.2d 1025, ¶ 25 (2d Dist.).

{¶ 13} We find no error in the trial court's admission and consideration of Johnson's testimony about the threatening statements Dalton made during his MonDay screening. The federal regulations at issue are directed exclusively to the "confidentiality of *substance use disorder* patient records." (Emphasis added.) 42 C.F.R. 2.1; *see also* 42 C.F.R. 2.2(b)(2) (subject regulations "are intended to ensure that a patient receiving treatment for a substance use disorder * * * is not made more vulnerable by reason of the availability of their patient record than an individual with a substance use disorder who does not seek treatment"). Consistent with that limited scope, 42 C.F.R. 2.12(e)(3)

specifies that "[t]he restrictions on disclosure of information" found within such regulations "apply to any information *which would identify the patient as having or having had a substance use disorder.*" (Emphasis added.)

{¶ 14} Dalton's statements to Johnson about his threatening feelings or intentions toward K.R. had no relevance as to his "having or having had a substance use disorder," nor do they convey any information that would identify him as having any such disorder. To the contrary, Johnson's testimony made clear, and Dalton does not dispute, that Dalton's threatening statements emerged in the context of an assessment of his *mental health* status. Where a defendant's incriminating statements did not relate to any substance abuse, the federal confidentiality rules do not apply. *See State v. Johnson*, 163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 37-41 (10th Dist.). Disclosure of Dalton's statements did not implicate 42 C.F.R. 2, so those federal confidentiality rules posed no obstacle to his statements' admission.

{¶ 15} Further, 42 C.F.R. 2's confidentiality restrictions pertain only to "substance use disorder patient records which are maintained in connection with the performance of *any part 2 program.*" (Emphasis added.) 42 C.F.R. 2.2(a). Nothing in the record demonstrates that the MonDay program qualifies as a "part 2 program" to which the subject regulations apply. The trial court did not err for that additional reason.

{¶ 16} Moreover, 42 C.F.R. 2.2(b) provides in pertinent part:

(1) * * * If any circumstance exists under which disclosure is permitted, *that circumstance acts to remove the prohibition on disclosure* but it does not compel disclosure. * * *

* * *

(3) Because there is a criminal penalty for violating the regulations, they are to be *construed strictly in favor of the potential violator* in the same manner as a criminal statute.

(Emphasis added.)

{¶ 17} Pursuant to 42 C.F.R. 2.2(b)(3), the trial court would have acted within its discretion by construing the federal confidentiality restrictions narrowly so as to excuse Johnson from complying with those rules. Moreover, as Johnson noted repeatedly throughout her testimony, mental health professionals in Ohio may be legally obligated to report to law enforcement a client or patient's "explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims," if the professional "has reason to believe that the client or patient has the intent and ability to carry out the threat." R.C. 2305.51(B)(4). *See also Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 308, 673 N.E.2d 1311 (1997) ("the duty to protect others is imposed when the medical professional knows *or should know* that the patient is likely to cause harm to others"). (Emphasis sic.) Even when confidentiality otherwise might attach to a patient's disclosures, "an exception [to confidentiality] exists for disclosures necessary to protect individual or public welfare." (Bracketed material sic.) *Id.* at 303, quoting *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 98, 529 N.E.2d 449 (1988), fn.19.

{¶ 18} 42 C.F.R. 2.2(b)(1) expressly states that the prohibition on disclosure is lifted "[i]f any circumstance exists under which disclosure is permitted." Although the trial court was not compelled to permit disclosure under these circumstances, *see id.*, it would not have abused its discretion by concluding that the statements attributed to Dalton

amounted to an explicit and sufficiently credible threat against K.R. to warrant disclosure of those statements to law enforcement officials despite any confidentiality restriction that otherwise might apply to those statements. Accordingly, even if Dalton's threatening statements had been subject to 42 C.F.R. 2's provisions (which we do not find they were), 42 C.F.R. 2.2(b)(1) recognizes an exception under which the trial court reasonably could have decided that those statements should be admitted into evidence.

{¶ 19} Finally, a criminal fine is the exclusive remedy 42 C.F.R. 2.3 provides for any violation of the federal confidentiality regulations. Because 42 C.F.R. 2 was not enacted as an evidentiary rule, it does not serve as an appropriate basis for the suppression or exclusion of evidence.

{¶ 20} Dalton's first assignment of error is overruled.

### Assignment of Error #2 – Manifest Weight of the Evidence

{¶ 21} Dalton's remaining assignment of error maintains that his conviction was against the manifest weight of the evidence because the greater weight of the evidence indicated Dalton had no reason to believe his statements regarding K.R. would be relayed to her. Again relying on his supposed expectation that any information provided to Johnson would be kept in confidence, and citing *State v. Farthing*, 146 Ohio App.3d 720, 767 N.E.2d 1242, ¶ 16 (2d Dist.2001), Dalton suggests that information conveyed to a mental health provider under an expectation of confidentiality cannot constitute an "unlawful threat of harm." We disagree.

{¶ 22} A weight-of-the-evidence argument "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Jones*, 2d Dist. Montgomery No. 28179, 2019-Ohio-

2940, ¶ 13, quoting *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 23} In the opinion Dalton cites, this Court stated:

The retaliation statute [R.C. 2921.05(A)] does not require that any threat of harm be communicated directly to the person threatened by the person doing the threatening. Rather, we have held that, where "the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed," he is guilty of the type of unlawful threat of harm required by the retaliation statute. * * * Because [defendant] Farthing did not communicate with [the putative victim] directly, we must determine whether he conveyed a threat of harm to anyone who could reasonably have been expected by Farthing to make that threat known to [the putative victim].

(Citation omitted.) *Farthing* at ¶ 16. Continuing our analysis, we concluded that although Farthing's expressions to a mental health counselor "of anger and lust" toward his former parole officer "did indicate very unhealthy thought processes about" that woman, the "feelings" or "sexual delusions" Farthing articulated were not "an unlawful threat of harm

toward" the woman. *Id.* at ¶ 18.

{¶ 24} Contrary to Dalton's proposed interpretation, we did not find that Farthing's professional relationship with his mental health counselor "prohibited the defendant's statements from being used for a retaliation charge." (*See* Merit Brief of Appellant, p. 13.) Rather, our holding was based on a determination that Farthing's "delusional [sexual] fantasies" about his parole officer, although lurid, were not a direct threat of violence. Our reference to the "professional training and experience" of Farthing's counselor was unrelated to any obligation to maintain confidentiality; instead, this Court was observing that while Farthing's actual words might be perceived as troubling from the perspective of a professional familiar with the behavioral patterns of "anger rapists," those words did not amount to "an unlawful threat of harm" toward his former parole officer. *Farthing* at ¶ 18.

{¶ 25} In contrast, the undisputed evidence in this case shows that Dalton unequivocally told Johnson that he wanted to "kill" the victim who had brought charges against him. While Dalton did not identify K.R. by name, that omission did not preclude the trial court from finding that the greater weight of the evidence proved beyond a reasonable doubt that Dalton was guilty of the offense of retaliation.

{¶ 26} We previously concluded that Johnson was not bound to hold in confidence any mental health information shared by Dalton, and that her duty to report credible threats of harm could negate any confidentiality restrictions that did apply. In addition, the form on which Dalton's argument relies expressly authorized Johnson to disclose to the trial court the information she gathered from and about Dalton; indeed, reporting to the court as part of the presentence investigation was the very purpose of the MonDay

referral. The form also explicitly stated that "further disclosure" could be made "as otherwise permitted by 42 CFR part 2." (Tr. State's Exh. 1a.) As discussed above, disclosure of threats to kill another person falls squarely within that exception to the federal confidentiality restrictions. Applying the standard set forth in *Farthing,* above, we cannot say that the trial court lost its way by determining that Dalton reasonably could have expected that Johnson, an employee of the MonDay program to whom he expressed the threat against K.R.'s life, would convey that threat either directly to K.R. or to persons who would share the information with K.R. *See Farthing*, 146 Ohio App.3d 720, 767 N.E.2d 1242, at ¶ 16.

{¶ 27} Dalton's second assignment of error is overruled.

## Conclusion

{¶ 28} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck
Heather N. Jans
Thomas M. Kollin
Hon. Richard Skelton